*986
 
 OPINION
 

 Per Curiam:
 

 After instructing his attorney not to prepare or assert a defense, appellant Jimmy Todd Kirksey appeared in court on the day scheduled for trial and pleaded guilty to first-degree murder for the beating death of Michael A. Foxx. Prior to the penalty hearing before a three-judge panel, Kirksey instructed his attorney not to present mitigating evidence, challenge the aggravating factors, or make any statements to the panel on his behalf. The three-judge panel found three aggravating circumstances and sentenced Kirksey to death. Although we concluded that two of the aggravating circumstances should not have been considered, we affirmed Kirksey’s conviction and sentence on direct appeal. Kirksey thereafter petitioned the district court for post-conviction relief. The district court held an evidentiary hearing and denied the petition. For reasons discussed below, we conclude that Kirksey received effective assistance of both trial and appellate counsel, and that Kirksey received a full and fair hearing on his post-conviction petition. Accordingly, we affirm.
 

 Background
 

 The facts surrounding the murder to which Kirksey pleaded guilty and for which he was sentenced to death are contained in our opinion resulting from Kirksey’s direct appeal.
 
 See
 
 Kirksey v. State, 107 Nev. 499, 814 P.2d 1008,
 
 cert. denied,
 
 502 U.S. 989 (1991).
 

 On February 28, 1992, Kirksey, through counsel,
 
 [1]
 
 filed a petition for habeas corpus relief, alleging numerous separate issues of cumulative, prejudicial error and ineffective assistance of counsel.
 
 [2]
 
 Kirksey alleged that his trial counsel, George Kelesis (Kelesis), failed to file appropriate pretrial motions and failed to conduct a proper investigation into either the underlying crime or mitigating circumstances. Kirksey also alleged that appellate counsel failed to raise several meritorious issues.
 

 
 *987
 
 The district court conducted an evidentiary hearing on February 1, 1993. Kirksey had subpoenaed ten witnesses: his trial counsel, his appellate counsel, his girlfriend, the attorneys who had represented two other individuals previously charged in connection with the crime, one of the individuals previously charged, two psychiatrists, a criminal defense attorney, and an attorney who had sought to become co-counsel in Kirksey’s case. The district court heard testimony from six of the witnesses, including Kelesis, and accepted an oifer of proof as to the testimony of the other witnesses. The State presented no evidence at the hearing. After additional briefing by the parties, the district court denied Kirksey’s petition.
 

 DISCUSSION
 

 I.
 
 Effective assistance of counsel
 

 A. Trial Counsel
 

 A claim of ineffective assistance of counsel presents a mixed question of law and fact and is therefore subject to independent review. State v. Love, 109 Nev. 1136, 1138, 865 P.2d 322, 323 (1993). This court evaluates a claim of ineffective assistance of trial counsel under the “reasonably effective assistance” test articulated in Strickland v. Washington, 466 U.S. 668 (1984), and followed in Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984),
 
 cert. denied,
 
 471 U.S. 1004 (1985). The
 
 Strickland
 
 analysis applies to both the guilt and penalty phases of a trial.
 
 Strickland,
 
 466 U.S. at 686-87;
 
 see also
 
 Paine v. State, 110 Nev. 609, 877 P.2d 1025, 1031 (1994),
 
 cert. denied,
 
 ..... U.S. ...., 115 S. Ct. 1405 (1995).
 

 Under the
 
 Strickland
 
 test, two elements must be established by a defendant claiming ineffective assistance of counsel: (1) that counsel’s performance was deficient, and (2) that the deficient performance prejudiced the defense.
 
 Strickland,
 
 466 U.S. at 687;
 
 see also
 
 Dawson v. State, 108 Nev. 112, 115, 825 P.2d 593, 595 (1992),
 
 cert. denied,
 
 507 U.S. 921 (1993). A court may consider the two test elements in any order and need not consider both prongs if the defendant makes an insufficient showing on either one.
 
 Strickland,
 
 466 U.S. at 697.
 

 “Deficient” assistance of counsel is representation that falls below an objective standard of reasonableness.
 
 Dawson,
 
 108 Nev. at 115, 825 P.2d at 595. “A fair assessment of attorney performance requires that every effort be made to eliminate the
 
 *988
 
 distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.”
 
 Strickland,
 
 466 U.S. at 689;
 
 accord Dawson,
 
 108 Nev. at 115, 825 P.2d at 595.
 

 In meeting the “prejudice” requirement, the defendant must show a reasonable probability that, but for counsel’s errors, the result of the trial would have been different.
 
 Strickland,
 
 466 U.S. at 694. When a conviction is the result of a guilty plea,
 

 [tjhe second, or “prejudice,” requirement . . . focuses on whether counsel’s constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the “prejudice” requirement, the defendant
 
 must show that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.
 

 Hill v. Lockhart, 474 U.S. 52, 59 (1985) (emphasis added);
 
 see also
 
 State v. Langarica, 107 Nev. 932, 933, 822 P.2d 1110, 1111 (1991),
 
 cert. denied,
 
 506 U.S. 924 (1992). “A reasonable probability is a probability sufficient to undermine confidence in the outcome.”
 
 Strickland,
 
 466 U.S. at 694.
 

 With these principles in mind, we address Kirksey’s contentions.
 

 1.
 
 Pretrial motion challenging the indictment
 

 Kirksey first contends that he was denied effective assistance of counsel because counsel failed to file a pretrial petition for habeas corpus challenging the sufficiency of the evidence presented to the grand jury to establish that Foxx’s death was caused by a criminal agency.
 
 [3]
 
 Kirksey argues that Kelesis’ decision not to file the motion was shown to be unreasonable by the testimony of criminal defense attorney Cal Potter, who testified that he would have filed such a motion. Kirksey further contends that such a motion would have been effective because the medical examiner “did not categorically state” that Foxx’s death “could only have been caused by the trauma.” We disagree with both contentions.
 

 In order to hold a person for trial, a grand jury must find probable cause to believe (1) an offense has been committed (the corpus delicti); and (2) the defendant has committed the offense. NRS 172.155. Two elements are necessary to establish the cor
 
 *989
 
 pus delicti: “(1) the fact of death; and (2) the criminal agency of another responsible for that death.” Azbill v. State, 84 Nev. 345, 350-51, 440 P.2d 1014, 1017 (1968). “The state need not eliminate all non-criminal inferences, but there must be an inference of a criminal agency even if there are also the equally plausible noncriminal explanations.”
 
 Id.
 
 at 352, 440 P.2d at 1019.
 

 In the case at bar, Dr. Green, the chief medical examiner for Clark County, testified before the grand jury that an aneurysm may burst spontaneously, as a result of an increase in blood pressure, or as a result of trauma — such as a beating about the head with fists or feet. When asked to identify the cause of Foxx’s death, Dr. Green stated:
 

 This is a result of this ruptured aneurysm or weak spot in one of the arteries of the brain.
 

 The rupture of that weak spot is in my opinion directly related to or is caused by the blunt trauma injury to the head.
 

 Finally, Dr. Green testified that in his opinion Foxx’s death was caused by a criminal agency.
 

 Kelesis testified at the post-conviction evidentiary hearing that after reviewing the autopsy report and grand jury testimony he did not have any question as to the sufficiency of the evidence “[f]or purposes of an indictment.” Consequently, he decided not to challenge the indictment; however, he farther testified that he believed there were some issues and questions that he would have been able to argue before a jury.
 

 Although the evidence did not rule out all possible noncriminal explanations, there was sufficient evidence for the grand jury to conclude that there was probable cause to believe Foxx’s death was caused by the beating administered by Kirksey. We therefore conclude that Kelesis made an objectively reasonable decision not to challenge the indictment. Any challenge would have been unsuccessful because there was sufficient evidence indicating that the victim’s death was caused by a criminal agency.
 

 2.
 
 Pretrial petition challenging composition of grand jury
 

 Kirksey next contends that he was denied effective assistance of counsel when counsel failed to file a pretrial petition for habeas corpus challenging the indictment based upon the under-representation of African-Americans on the grand jury. We disagree.
 

 “[I]t is settled that a grand jury must be drawn from a cross-section of the community, and there must be no systematic and
 
 *990
 
 purposeful exclusion of an identifiable class of persons.” Adler v. State, 95 Nev. 339, 347, 594 P.2d 725, 731 (1979) (holding that exclusion of persons unwilling to serve operates without regard to race, sex, status or ethnic background). The procedure for impaneling grand juries is set forth in NRS 6.110. In a county with a population of 100,000 or more, the clerk of the court randomly selects and sends a questionnaire to 500 qualified persons until a panel of 100 persons who are willing to serve is established. NRS 6.110(1). The district judges then meet and each selects a name from the list of 100 until 50 persons have been selected. NRS 6.110(2). These 50 persons make up the venire, from which the presiding district judge randomly selects 17 persons as the grand jury, plus 12 alternates. NRS 6.110(3).
 

 Kirksey’s post-conviction counsel indicated that the Clark County grand jury which indicted Kirksey (a black male) was composed of one Latino female, four white females, eight white males, and two males and one female of undetermined race. Kirksey, however, has presented no evidence regarding the composition of the 50-person venire. Additionally, Kirksey has done nothing to demonstrate that there was purposeful discrimination or that the random process explained above was either not used or somehow resulted in purposeful discrimination. We therefore conclude that Kirksey’s claim of underrepresentation fails the
 
 Strickland
 
 test.
 

 3.
 
 Motion to suppress incriminating statements
 

 When an ineffective assistance claim is based upon counsel’s failure to file a motion to suppress evidence allegedly obtained in violation of the Fourth Amendment, the prejudice prong must be established by a showing that the claim was meritorious and that there was a reasonable likelihood that the exclusion of the evidence would have changed the result of a trial. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).
 
 [4]
 
 We conclude that the same analysis applies when the ineffective assistance claim is based upon counsel’s failure to file a motion to suppress a confession.
 

 To be admissible, a confession must be made freely and voluntarily, without compulsion or inducement. Passama v. State, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987). A confession must be the product of a free will and rational intellect.
 
 Id.
 
 at 213-14, 735 P.2d at 322. Physical intimidation or psychological pressure
 
 *991
 
 constitute coercion, making a confession involuntary.
 
 Id.
 
 at 214, 735 P.2d at 322-23. The voluntariness of a confession must be determined from the eifect of the totality of the circumstances on the defendant’s will.
 
 Id.,
 
 735 P.2d at 323. This court has listed the following factors to be considered:
 

 the youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep.
 

 Id.
 

 We now address, based on the above standards, the merits of Kirksey’s claims that he was prejudiced by trial counsel’s failure to challenge the voluntariness of Kirksey’s incriminating statements.
 

 Kirksey made two incriminating statements to detectives in Riverside, California, and one incriminating statement to detectives in Las Vegas. The Riverside statements were made on December 23 and 24, 1988. At this time, Kirksey was in custody on a warrant for the murder of Gayette Davis. Before the Riverside detectives interviewed Kirksey on December 23, Kirksey was advised of his
 
 Miranda
 
 rights. Kirksey stated that he understood and waived those rights. Thereafter, Kirksey described his involvement in a Las Vegas murder. Riverside Detective Frogue testified before the grand jury that he thought Kirksey might have been high during the December 23 interview. After learning from the Las Vegas Metropolitan Police Department (LVMPD) that Kirksey had been arrested and released on a murder charge, the Riverside detectives reinterviewed Kirksey on December 24. At the beginning of the interview, the detectives asked Kirksey if he remembered his rights and was still willing to waive them. Kirksey responded in the affirmative. Kirksey then related substantially the same information he had given on the previous day.
 

 After Kirksey was returned to Nevada, LVMPD Detective Dibble interviewed him on February 8, 1989. Dibble advised Kirksey of his
 
 Miranda
 
 rights prior to the interview. Kirksey waived his rights. Kirksey then responded to questions and recounted the beating in great detail.
 

 Kirksey argues that his first statement to the Riverside detectives could have been suppressed based upon Detective Frogue’s grand jury testimony that Kirksey appeared to have been under the influence of a drug when he made the statement. Kirksey also relies on his medical records from September 7, 1987 through December 1988 to show that he may have been suffering from symptoms of cocaine addiction and withdrawal during all of the statements. Finally, Kirksey suggests, without any explanation or
 
 *992
 
 support in the record, that all of the statements were the result of coercion.
 

 The defendant’s intoxication alone does not automatically make a confession inadmissible.
 
 See, e.g.,
 
 United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990) (methamphetamine use for four days prior to arrest and confession),
 
 cert. denied,
 
 499 U.S. 941 (1991); Graves v. United States, 878 F. Supp. 409, 414 (N.D.N.Y.) (alcohol consumption),
 
 aff’d,
 
 ..... F.3d ..... (2d Cir. 1995); State v. Rivera, 733 P.2d 1090, 1096-97 (Ariz. 1987) (alcohol consumption); Espinoza v. State, 899 S.W.2d 359, 362 (Tex. Ct. App. 1995) (alcohol consumption). A confession “is inadmissible only if it is shown ‘that the accused was intoxicated to such an extent that he was unable to understand the meaning of his comments.’”
 
 Rivera,
 
 733 P.2d at 1097 (quoting State v. Hicks, 649 P.2d 267, 275 (Ariz. 1982)). Similarly, a confession by a defendant suffering from drug withdrawal
 
 may
 
 be involuntary when the withdrawal results in a confession which is not the product of a rational intellect and a free will. Pickworth v. State, 95 Nev. 547, 549, 598 P.2d 626, 627 (1979). In
 
 Pickworth,
 
 this court concluded that the defendant’s confession was voluntarily made where the withdrawal symptoms were minor, and the defendant was coherent, able to recall facts in great detail, and showed no signs of discomfort.
 
 Id.
 

 We conclude that the evidence presented by Kirksey was not sufficient to successfully challenge the voluntariness of any of his incriminating statements. There is no indication that Kirksey was so intoxicated on December 23, 1988, that he was unable to understand the meaning of the statement he made. Moreover, there is no indication that Kirksey was uncomfortable or incoherent. In each of the statements, he recounted the incident in essentially the same words. He was responsive to the questions posed by the officers in each interview and there was little variation in his story. Before each statement, Kirksey was advised of his
 
 Miranda
 
 rights and agreed to waive them. None of the interviews was of inordinate duration. Finally, although Kirksey suggests that each statement was the product of coercion, he presented no evidence to support this contention. Accordingly, we conclude that this issue is without merit.
 

 4.
 
 Pre-trial investigation
 

 An attorney must make a reasonable investigation in preparation for trial, or a reasonable decision not to investigate.
 
 *993
 

 Strickland,
 
 466 U.S. at 691. “Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.”
 
 Id.
 
 at 690-91.
 

 Kirksey argues that he has been denied effective assistance of counsel because counsel failed to pursue any independent investigation of the facts underlying the murder charge. Specifically, Kirksey contends that Kelesis’ representation was deficient because he never consulted with the independent investigator appointed for the defense, never talked to Jerry Jordon
 
 [5]
 
 about testifying, never contacted LVMPD Detective Dibble to obtain the homicide notebook, never tried to view the physical evidence, never sought an independent medical examination as to the cause of death, never obtained medical records from Riverside General Hospital establishing Kirksey’s long history of cocaine use and psychotic behavior, never conducted an independent investigation of the California murders, and never contacted family members. Kirksey therefore concludes that Kelesis could not have made an informed and rational decision to acquiesce in Kirksey’s instructions not to prepare a defense.
 

 Kelesis testified at the post-conviction hearing that he reviewed the prosecution’s file, autopsy reports on both the Nevada and California murders, grand jury testimony, and prison records from California. He further testified that he had wanted to meet with Kirksey’s mother, but Kirksey instructed him not to do so. Kelesis also stated that he had discussed the State’s evidence with Kirksey on several occasions.
 

 First, we conclude that Kelesis’ decision was objectively reasonable under the circumstances. In Thomas v. Lockhart, 738 F.2d 304, 308 (8th Cir. 1984), the Eighth Circuit concluded that an attorney’s performance was deficient where he relied solely on the prosecution’s file, medical reports, and interviews with the defendant where the defendant consistently maintained his innocence and denied statements made to the police. The
 
 Thomas
 
 court specifically distinguished that case from one wherein the defendant has not provided the attorney with any information that would cast doubt on the events as portrayed in the prosecutor’s files.
 
 Id.; see also
 
 Benson v. United States, 552 F.2d 223, 224-25 (8th Cir.),
 
 cert. denied,
 
 434 U.S. 851 (1977).
 

 Here, Kirksey never denied his involvement and never suggested to Kelesis that his statements were made involuntarily.
 
 *994
 
 Everything Kirksey told Kelesis appeared to be consistent with the prosecution’s file. Additionally, on July 13, 1989, Judge Lehman received a handwritten letter from Kirksey. In that letter, Kirksey admitted to the two California murders and the Las Vegas murder.
 
 [6]
 
 It is also clear that based upon his investigation, Kelesis believed there were issues regarding the cause of death which he could have raised with the jury. Kirksey refused to give him that opportunity. Additionally, in his July 1989 letter to Judge Lehman, Kirksey wrote: “This sorry ass old atterney [sic] you gave me. This fool thinks he is going to lower this down to man slotter [sic]. But between me and you old man we know better than that.”
 

 Kirksey’s letter indicates that Kelesis had presented him with the possibility of a lesser charge, but that Kirksey was determined to plead guilty and ask for a death sentence. In viewing the circumstances of this case from Kelesis’ point of view at the time, we are unable to conclude that Kelesis’ performance fell below an objective standard of reasonableness.
 

 Further, we conclude that Kirksey has failed to show sufficient prejudice. As noted earlier, when a guilty plea is challenged for ineffective assistance, the defendant must show a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial. Kirksey pleaded guilty without the benefit of any plea negotiations or promises from the prosecution; indeed, Kirksey was informed on the record that the State would seek the death penalty and that his guilty plea could result in a death sentence. There is no indication that his decision was the result of any urging by Kelesis or that any of the allegedly uninvestigated information would have induced Kirksey to change his mind and invoke his right to a trial.
 

 5.
 
 Investigation of mitigating evidence
 

 On the first day of the sentencing hearing, Kelesis informed the
 
 *995
 
 three-judge panel that he had visited with Kirksey a number of times in the days leading up to the penalty hearing and that Kirksey had made it quite clear that he did not want Kelesis to challenge the State’s evidence, present mitigating evidence, or make an opening or closing statement during the sentencing hearing. The three-judge panel canvassed Kirksey on two different occasions during the penalty hearing to ensure that Kirksey understood the seriousness of his decision.
 

 Kirksey said that he was satisfied with his attorney’s performance, understood that he could present mitigating evidence and that he did not want to do so. He also stated that he was not aware of any witnesses who should have been interviewed, but were not. Finally, Kirksey said that he felt he was competent to make this decision.
 

 Kirksey argues that he has been denied effective assistance of counsel because counsel failed to investigate or prepare for the penalty hearing. A post-conviction investigation suggests that Kirksey had a history of psychotic and suicidal episodes, and of drug and alcohol abuse. The investigation further indicates that Kirksey’s father had committed suicide when Kirksey was seventeen. Kirksey argues that this information should have been presented to the three-judge panel as mitigating evidence. Kirksey further insists that had counsel conducted an investigation into possible mitigating evidence, “it is unlikely” that Kirksey would have prevented counsel from presenting the evidence to the three-judge panel because Kirksey’s instructions were “based upon his view that he would get death or life without in California anyway so why not do it now.”
 
 [7]
 
 Finally, Kirksey contends that Kelesis’ ineffective assistance denied him of his right to an individualized sentence.
 

 Generally, when a defendant is charged with first-degree murder, defense counsel must prepare for the eventuality that a guilty verdict may be returned.
 
 See
 
 Blake v. Kemp, 758 F.2d 523, 533 (11th Cir.),
 
 cert. denied,
 
 474 U.S. 998 (1985). However, a defendant may waive the right to present mitigating evidence and defense counsel’s acquiescence to such a waiver does not constitute ineffective assistance of counsel.
 
 See, e.g.,
 
 People v. Lang, 782 P.2d 627, 652-54 (Cal. 1989),
 
 cert. denied,
 
 498 U.S. 881 (1990).
 
 [8]
 
 As the California Supreme Court has reasoned:
 

 
 *996
 
 To require defense counsel to present mitigating evidence over the defendant’s objection would be inconsistent with an attorney’s paramount duty of loyalty to the client and would undermine the trust, essential for effective representation, existing between attorney and client. Moreover, imposing such a duty could cause some defendants who otherwise would not have done so to exercise their Sixth Amendment right of self-representation before commencement of the guilt phase in order to retain control over the presentation of evidence at the penalty phase, resulting in a significant loss of legal protection for these defendants during the guilt phase.
 

 Lang,
 
 782 P.2d at 653 (citations omitted). The
 
 Lang
 
 court also concluded that a defendant who refuses to allow his attorney to present mitigating evidence at the penalty phase is estopped from later claiming ineffective assistance based on counsel’s acquiescence to his wishes.
 
 Id.
 
 at 654. The California court recognized, however, that failure to adequately investigate the availability of mitigating evidence or to advise the defendant regarding its significance might undermine the defendant’s decision not to present mitigating evidence and thereby support a claim of ineffective assistance.
 
 See id.
 
 at 654.
 

 We agree with the California court’s reasoning. This approach is also consistent with prior Nevada cases wherein this court has upheld the death sentence where the defendant, appearing
 
 in propria persona,
 
 refused to present mitigating evidence or to allow standby counsel to present mitigating evidence.
 
 See, e.g.,
 
 Bishop v. State, 95 Nev. 511, 597 P.2d 273 (1979). We therefore conclude that Kirksey cannot predicate his claim of ineffective assistance solely on Kelesis’ acquiescence.
 

 Moreover, the record of Kirksey’s sentencing hearing belies his contention that he decided not to present mitigating evidence based solely on Kelesis’ uninvestigated representation that Kirksey would receive the death penalty in California. During one of the instances when the panel members canvassed Kirksey regarding his decision, the following exchange took place:
 

 JUDGE ADAMS: ....
 

 Why don’t you [Kirksey] want to aggressively be represented here and defend yourself at a hearing when the result
 
 *997
 
 of that hearing could be the difference between whether you live or die? Just tell me why.
 

 THE DEFENDANT: Either way, man, look, I’ll be in the penitentiary the rest of my life or I’m going to get the death penalty. You know what I’m saying? I might as well be dead, anyway, if I’m going to set [sic] in the penitentiary, anyway, the rest of my life. I can’t win either way it goes, California or here.
 

 I did them. You know what I’m saying? I don’t feel no remorse about it, because I don’t care. Just let it happen. JUDGE GAMBLE: Now, Mr. Kirksey, do you understand one of the findings we might make is life with the possibility of parole?
 

 THE DEFENDANT: Yeah. But, then, I got to go back to California. And then what? I get it there or get another life or another life without.
 

 JUDGE GAMBLE: I just don’t want you to be thinking your only two choices are to be in prison forever or die, because there is another choice if you aggressively defend this.
 

 THE DEFENDANT: Man, with this, with the Las Vegas and California together, I ain’t never getting out of the penitentiary. Either way it go, I end up killing somebody else in the penitentiary. Either go crazy in the penitentiary, setting in the penitentiary all my life, end up taking somebody’s life.
 

 This dialogue demonstrates that Kirksey was aware of the lesser possible sentences if he were returned to California for trial. It is equally clear that Kirksey did not want to live in jail.
 

 After reviewing the record, we conclude that Kirksey was not misled by his counsel when he decided that he did not want counsel to present mitigating evidence and that because Kirksey instructed counsel not to present mitigating evidence, he cannot now claim ineffective assistance based on counsel’s acquiescence or failure to investigate.
 

 B. Appellate counsel
 

 Next, Kirksey argues that he has been denied effective assistance of appellate counsel because his attorney failed to assert the following claims on appeal: (1) denial of due process rights based upon district court’s refusal to appoint co-counsel; (2) denial of due process rights when district judge engaged in an ex parte communication with one of the psychiatrists assigned to determine whether Kirksey was competent to stand trial; (3) denial of due process and right to be present when three-judge panel
 
 *998
 
 reconvened to consider effect of federal court decision regarding depravity of mind aggravating factor; and (4) denial of due process rights because of arbitrary and capricious manner in which three-judge panel was selected.
 

 The constitutional right to effective assistance of counsel extends to a direct appeal. Burke v. State, 110 Nev. 1366, 1368, 887 P.2d 267, 268 (1994). A claim of ineffective assistance of appellate counsel is reviewed under the “reasonably effective assistance” test set forth in Strickland v. Washington, 466 U.S. 668 (1984).
 
 [9]
 
 Effective assistance of appellate counsel does not mean that appellate counsel must raise every non-frivolous issue.
 
 See
 
 Jones v. Barnes, 463 U.S. 745, 751-54 (1983). An attorney’s decision not to raise meritless issues on appeal is not ineffective assistance of counsel. Daniel v. Overton, 845 F. Supp. 1170, 1176 (E.D. Mich. 1994); Leaks v. United States, 841 F. Supp. 536, 541 (S.D.N.Y. 1994),
 
 aff’d,
 
 47 F.3d 1157 (2d Cir.),
 
 cert. denied,
 
 ..... U.S. ...., 116 S. Ct. 327 (1995). To establish prejudice based on the deficient assistance of appellate counsel, the defendant must show that the omitted issue would have a reasonable probability of success on appeal. Duhamel v. Collins, 955 F.2d 962, 967 (5th Cir. 1992);
 
 Heath,
 
 941 F.2d at 1132. In making this determination, a court must review the merits of the omitted claim.
 
 Heath,
 
 941 F.2d at 1132.
 

 With these principles in mind, we address Kirksey’s contentions.
 
 [10]
 

 1.
 
 Errors arising prior to the plea: appointment of co-counsel and ex parte communication
 

 The errors alleged by Kirksey regarding the motion for appointment of co-counsel and Judge Lehman’s ex parte communication with Dr. Masters occurred prior to the entry of his guilty plea. The State contends that by pleading guilty, Kirksey
 
 *999
 
 waived all errors arising prior to the plea. Warden v. Lyons, 100 Nev. 430, 432, 683 P.2d 504, 505 (1984),
 
 cert. denied,
 
 471 U.S. 1004 (1985); Webb v. State, 91 Nev. 469, 470, 538 P.2d 164, 165 (1975).
 

 As we have explained:
 

 “[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.”
 

 Webb,
 
 91 Nev. at 470, 538 P.2d at 165 (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). Where the defendant has pleaded guilty, the only claims that may be raised thereafter are those involving the voluntariness of the plea itself and the effectiveness of counsel. NRS 34.810(1);
 
 Lyons,
 
 100 Nev. at 432, 683 P.2d at 505.
 

 Because the denial of the motion for appointment of co-counsel and the ex parte communication occurred prior to the entry of the guilty plea, appellate counsel could not have raised these claims on direct appeal. Therefore, appellate counsel’s failure to raise these issues could not be considered ineffective assistance.
 
 [11]
 

 Although the waiver of these issues is dispositive, we also note that a review of the merits of these two contentions further demonstrates that even if appellate counsel could have asserted these claims, there was no reasonable probability of success on appeal. Appointment of co-counsel under NRS 260.060 is discretionary, even in a capital case, and the denial of co-counsel is appropriate when the amount of preparation and investigation required is not unduly burdensome.
 
 See, e.g.,
 
 DePasquale v. State, 106 Nev. 843, 846, 803 P.2d 218, 220 (1990),
 
 cert. denied,
 
 502 U.S. 829 (1991); Sechrest v. State, 101 Nev. 360, 367-68, 705 P.2d 626, 631-32 (1985). Since Kirksey’s motion for co-counsel came approximately five months prior to the sched
 
 *1000
 
 uled trial, there was sufficient time for his attorney to investigate and prepare for trial.
 

 Although Judge Lehman’s ex parte communication with Dr. Masters
 
 [12]
 
 was inappropriate, there is no evidence that the communication resulted in bias or prejudice on the part of the judge.
 
 [13]
 
 Additionally, there is no evidence that Dr. Masters was somehow coerced to change his opinion. We therefore conclude that this contention lacks merit and would have had no reasonable probability of success on appeal.
 

 2.
 
 Right to be present at all critical stages
 

 Kirksey argues that his right to be present during all critical stages of the criminal proceeding was violated when the three-judge panel reconvened for further deliberations. Kirksey contends that he was denied effective assistance of counsel because appellate counsel failed to raise this argument on appeal. We disagree.
 

 The right to be present is rooted in the Confrontation Clause and the Due Process Clause of the Federal Constitution. The confrontation aspect arises when the proceeding involves the presentation of evidence. United States v. Gagnon, 470 U.S. 522, 526-27 (1985). The due process aspect has been recognized only to the extent that a fair and just hearing would be thwarted by the defendant’s absence.
 
 Id.
 
 The right to be present is subject to harmless error analysis. Rushen v. Spain, 464 U.S. 114, 118 n.2 (1983). The defendant must show that he was prejudiced by the absence.
 
 See
 
 People v. Wharton, 809 P.2d 290, 341 (Cal. 1991),
 
 cert. denied,
 
 502 U.S. 1038 (1992).
 

 
 *1001
 
 The three-judge panel that sentenced Kirksey reconvened in order to discuss the impact of a Ninth Circuit opinion declaring Nevada’s depravity of mind aggravating factor unconstitutionally vague.
 
 [14]
 
 The panel merely confirmed what it had already stated at the conclusion of the penalty hearing—that any one of the aggravating circumstances was sufficient to support the death sentence. The prosecutor was not present and the panel did not consider any new evidence. Under the circumstances, Kirksey’s right to be present was not violated and his defense was not prejudiced by his absence. Accordingly, we concluded that Kirksey has failed to demonstrate a reasonable probability that this contention would have succeeded on appeal.
 

 3.
 
 Constitutionality of three-judge panel system
 

 Kirksey raises two challenges to the constitutionality of Nevada’s three-judge panel system which he claims appellate counsel should have raised on direct appeal. We conclude that both contentions lacked a reasonable probability of success on appeal.
 

 First, Kirksey argues that the three-judge panel system is unconstitutional because the procedure for the selection of the panel is arbitrary and capricious. Kirksey has presented no evidence to suggest that this court selected judges who are partial to the death sentence to sit on the three-judge panel which considered his sentence. Additionally, this same issue was addressed and rejected in Paine v. State, 110 Nev. 609, 618, 877 P.2d 1025, 1030 (1994),
 
 cert.
 
 denied, ..... U.S. ....., 115 S. Ct. 1405 (1995), wherein this court stated: “Paine’s fear that this court selects judges who are partial to sentences of death is not only unsupported, it is unsupportable since it does not occur.” Although
 
 Paine
 
 had not been decided at the time of Kirksey’s direct appeal, our ruling in
 
 Paine
 
 strongly underscores the lack of merit in Kirksey’s contention.
 

 Second, Kirksey argues that the three-judge panel system is unconstitutionally arbitrary and capricious because three-judge panels return death sentences more often than juries. This court has rejected this argument.
 
 See, e.g., Paine,
 
 110 Nev. at 617, 877 P.2d at 1030; Redmen v. State, 108 Nev. 227, 235-36, 828 P.2d 395, 401,
 
 cert. denied,
 
 506 U.S. 880 (1992),
 
 overruled in part on other grounds by
 
 Alford v. State, 111 Nev. 1409, 906 P.2d 714 (1995). Again, although these cases were decided after
 
 *1002
 
 Kirksey’s direct appeal, they indicate that this court would not have granted Kirksey a new sentencing hearing based on this contention.
 

 II.
 
 Failure to provide exculpatory evidence
 

 Kirksey next argues that the prosecutor failed to present certain evidence to the grand jury which could have explained away the murder charge by showing that Foxx had moved around the room (i.e., he was alive when Kirksey left) and that Foxx had been taking cocaine (i.e., the cocaine rather than the beating by Kirksey caused Foxx’s death).
 
 [15]
 
 NRS 172.145(2) requires that “[i]f the district attorney is aware of any evidence which
 
 will explain away the charge,
 
 he shall submit it to the grand jury.” (emphasis added);
 
 see also
 
 Moran v. Schwarz, 108 Nev. 200, 202, 826 P.2d 952, 953 (1992).
 

 We first emphasize that this contention has been waived by Kirksey’s guilty plea, and such waiver is dispositive of this issue. By pleading guilty, Kirksey waived all claims of error that occurred prior to the plea unless related to the voluntariness of the plea. Warden v. Lyons, 100 Nev. 430, 432, 683 P.2d 504, 505 (1984),
 
 cert. denied,
 
 471 U.S. 1004 (1985); Webb v. State, 91 Nev. 469, 470, 538 P.2d 164, 165 (1975).
 

 Nevertheless, we note that none of the evidence highlighted by Kirksey would tend to explain away the charge. First, it is of no consequence whether Foxx was alive when Kirksey left the hotel room, as long as the prosecution could establish that the beating by Kirksey caused Foxx’s death. Second, Dr. Green testified
 
 *1003
 
 before the grand jury that there were traces of cocaine in Foxx's blood consistent with recreational use of the drug, but that in his opinion it was the trauma (i.e., beating) which caused the aneurysm to rupture. Therefore, the prosecutor did not violate NRS 172.145(2).
 

 III. Denial of excess funds for post-conviction investigation
 

 Kirksey next argues that the district court should have granted his request for funds for an investigator to travel to California. Kirksey contends that the funds were necessary because, to be effective, his post-conviction counsel had to make a full investigation of possible mitigating evidence. The State responds that there is no right to effective assistance of post-conviction counsel and, thus, no requirement that the State provide an investigator. The State also contends, correctly, that it was within the district court's discretion to provide investigatory aid. State v. Apelt, 861 P.2d 654, 660 (Ariz. 1993), cert. denied, 513 U.S. 834, 115 S. Ct. 110 (1994).
 

 Moreover, although the district judge was unwilling to pre-approve funds for an investigation in California, he did appoint an investigator and stated that he would reconsider the California issue if post-conviction counsel could show that Kelesis had provided ineffective assistance. However, Kirksey's post-conviction counsel never asked the district court to reconsider the matter, and on June 22, 1993, the district court approved the payment of $5,000 in investigative fees. We conclude that the district court did not abuse its discretion and that post-conviction counsel was able to conduct an adequate investigation on Kirksey's behalf.
 

 IV. Full and fair post-conviction hearing
 

 Finally, Kirksey contends that he was denied his due process right to a full and fair hearing by the district court's (1) "arbitrary" time limitation on the post-conviction evidentiary hearing; (2) failure to consider exhibits submitted in support of the habeas petition; and (3) refusal to recuse itself. We disagree.
 

 1. Time limitation
 

 Kirksey had subpoenaed ten witnesses to testify at the hearing. The evidentiary hearing began at 10:40 a.m. and concluded at 5:15 p.m., with a lunch break from 11:25 a,m. to 1:35 p.m. During the direct examination of Kirksey `s second witness, the district court asked Kirksey's post-conviction counsel to move
 
 *1004
 
 along because "your time is rather limited." Just before Erickson finished the direct examination of her third witness, the district court made it clear that the hearing would conclude at 5:00 p.m. When this witness finished testifying, the district court asked counsel to make an offer of proof as to the testimony of the remaining witnesses. Thereafter, counsel had one hour left and the district court allowed her to continue calling witnesses.
 

 Although it would have been preferable in this capital case for the district court to have heard testimony from all of Kirksey's witnesses, we conclude that any error was harmless. The district court allowed Kirksey's attorney to make an offer of proof regarding the proposed testimony of each witness who did not testify, and there is no indication that any witness who did not testify would have made any difference in the outcome of the hearing.
 

 2. Consideration of exhibits
 

 After the district court had denied the petition and Kirksey had filed a notice of appeal, Kirksey filed a motion with this court to supplement the record on appeal to include Exhibits 2-25 and 31-34 that were presented at the evidentiary hearing.
 
 [16]
 
 This court referred the matter to the district court in order to determine whether the district court had considered the mentioned exhibits. The district court responded that the exhibits in question were irrelevant to the issues before the district court. Subsequently, this court entered an order granting Kirksey's motion and directing the district court clerk to transmit the exhibits.
 
 [17]
 
 Kirksey v. State, Docket No. 25540, (Order, January 13, 1995).
 

 Kirksey does not contend that the district court abused its discretion in refusing to admit the exhibits into evidence. Rather, Kirksey's argument is that he was denied a full and fair hearing because the district court failed to consider the exhibits. Although it is arguable that the district court abused its discretion in refusing to admit the exhibits,
 
 [18]
 
 it is clear that the district court
 
 *1005
 
 did not completely ignore the exhibits. When the district court responded to this court’s order, it stated that it had “only considered exhibits 12, 13, and 14 in reaching its decision.” The district court further stated that the other exhibits “were irrelevant to the issues before the court.” Kirksey v. State, Docket No. 25540, (Order, January 15, 1995). The district court must have at least considered the exhibits in order to determine that they were irrelevant to the issues before it. In any event, our review of the exhibits prompts us to conclude that they contain no basis for granting relief to Kirksey. The district court did not err in finding the exhibits irrelevant.
 

 3.
 
 Recusal
 

 Kirksey’s final substantive contention is that he was denied a fair hearing when the district judge refused to recuse himself. Kirksey sets forth three events requiring the district court’s recu-sal: (1) the district court’s ex parte communication with Dr. Masters; (2) the district court’s calling of witnesses during the evidentiary hearing; and (3) the district court’s knowledge of information about Kirksey which was not part of the record. Kirksey contends that under these circumstances the district court’s impartiality might reasonably be questioned.
 

 NRS 1.230 specifies grounds for the disqualification of judges other than supreme court justices:
 

 1. A judge shall not act as such in an action or proceeding when he entertains actual bias or prejudice for or against one of the parties to the action.
 

 2. A judge shall not act as such in an action or proceeding when implied bias exists in any of the following respects:
 

 (a) When he is a party to or interested in the action or proceeding.
 

 (b) When he is related to either party by consanguinity or affinity within the third degree.
 

 (c) When he has been attorney or counsel for either of the parties in the particular action or proceeding before the court.
 

 (d) When he is related to an attorney or counselor for either of the parties by consanguinity or affinity within the third degree. . . .
 

 3. A judge, upon his own motion, may disqualify himself from acting in any matter upon the ground of actual or implied bias.
 

 A judge has an obligation not to recuse himself where there is no occasion to do so.
 
 See
 
 Goldman v. Bryan, 104 Nev. 644, 649,
 
 *1006
 
 764 P.2d 1296, 1299 (1988). A judge's decision not to recuse himself voluntarily is given "substantial weight" and will be affirmed absent an abuse of discretion. Id. The burden is on the party asserting the challenge to establish sufficient facts warranting disqualification. Id.
 

 4. Ex parte communication
 

 Although Judge Lehman's ex parte communication with Dr. Masters was inappropriate, it is easily distinguishable from the cases cited by Kirksey. The cited cases each held that a sentenc-jag judge who has had ex parte communications with members of the victim's family must recuse himself. The logic is obvious; during such communications the judge may become aware of prejudicial and inadmissible information and may form a bias from being unduly moved by the more intimate presence and statements of a victim's surviving family members. Nothing of the sort happened in this case; rather, Judge Lehman contacted Dr. Masters in order to clarify the doctor's findings as to Kirksey `s competency. There is nothing in the record that would indicate that Judge Lehman was prejudiced by the communication or that he improperly influenced Dr. Masters' evaluation.
 

 5. Calling witnesses
 

 After Kirksey's fifth witness testified, the district court called a brief recess. Upon return, the district court sua sponte called to the stand his law clerk and secretary to testify as to whether defense counsel had requested more than one day for the eviden-tiary hearing. The law clerk testified that he had told counsel that the court had planned a one-day hearing and that counsel never requested more time. On cross-examination, the law clerk stated that he told counsel that it was not unusual for Judge Lehman to go past regular court hours when necessary. The secretary testified that it was her understanding, based on discussions with defense counsel, that the hearing would only take one day. On cross-examination, the secretary stated that she never informed counsel how long a day meant. At the conclusion of this testimony, counsel motioned the judge to recuse himself. The recusal motion was denied.
 

 NRS 50.145 allows a trial judge to call witnesses on his own motion. Although we disapprove of the procedure followed by the district court in this case, we do not perceive any aspect of bias behind the district court's actions, nor do we see any basis for requiring the recusal of the district court judge.
 

 
 *1007
 
 6.
 
 Judge Lehman’s knowledge of certain facts
 

 The final instance of alleged bias involves Judge Lehman’s knowledge that on the day set for trial, Kirksey had asked Kelesis the fastest way to get a death sentence — by jury or three-judge panel. “The general rule of law is that what a judge learns in his official capacity does not result in disqualification.”
 
 Goldman,
 
 104 Nev. at 653, 764 P.2d at 1301. In other words, the party asserting the challenge must show that the judge learned prejudicial information from an extrajudicial source.
 
 See id.
 
 However, an opinion formed by a judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, constitutes a basis for a bias or partiality motion where the opinion displays “a deep-seated favoritism or antagonism that would make fair judgment impossible.”
 
 See
 
 Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994).
 

 Here, it appears from the record that Judge Lehman’s awareness of the information was acquired in the course of judicial proceedings. In any event, Kirksey does not explain how he was prejudiced by Judge Lehman’s knowledge of this conversation. In fact, the conversation merely reflects the same information Judge Lehman learned at the penalty hearing — Kirksey wanted the death penalty. There also is no evidence that Judge Lehman formed an opinion regarding Kirksey based on the information that would display a deep-seated antagonism or make fair judgment impossible. We therefore conclude that the district court did not abuse its discretion in denying the motion to disqualify.
 

 CONCLUSION
 

 For the foregoing reasons, we conclude that none of Kirksey’s issues on appeal has merit. We therefore affirm the district court’s order denying Kirksey’s petition for post-conviction relief.
 

 [1]
 

 On February 19, 1992, the district court filed a nunc pro tunc order appointing Patricia M. Erickson as post-conviction counsel for Kirksey effective January 24, 1992.
 

 [2]
 

 The petition raised the following claims: (1) ineffective assistance of trial and appellate counsel; (2) procedural and substantive errors by the trial court; (3) procedural and substantive errors by the three-judge panel; (4) Kirksey’s incompetence to stand trial; (5) guilty plea was involuntarily and unknowingly entered; (6) selection process for three-judge panel was arbitrary and capricious, violating Kirksey’s due process rights; (7) Nevada Supreme Court’s review of death penalty cases is constitutionally inadequate; (8) death penalty violates Nevada Constitution; and (9) cumulative error.
 

 [3]
 

 Under NRS 172.155, “[t]he defendant may object to the sufficiency of the evidence to sustain the indictment only by application for a writ of habeas corpus.”
 

 [4]
 

 See also
 
 State v. Berryman, 875 P.2d 850, 855 & n.3 (Ariz. Ct. App. 1994); People v. Wharton, 809 P.2d 290, 323 (Cal. 1991),
 
 cert. denied,
 
 502 U.S. 1038 (1992).
 

 [5]
 

 Jordon was with Kirksey in Foxx’s motel room and had made a statement to the police that Kirksey had beaten Foxx. Jordon was acquitted on a charge of involuntary manslaughter.
 

 [6]
 

 With respect to Foxx’s death, Kirksey wrote:
 

 The one up here they paid me to kill him. He also had a big mouth. So I beat his brains out. Matter of facted [sic] it was kinda fun. But he was gonna die anyways [sic]. So let’s just say I help [sic] him through the door. But you know what the mistake I made is this. One body ther [sic] should have been three. That way ther [sic] would have been no witnesses. I did wipe the finger prints off.
 

 Although the State’s handwriting expert was unable to identify the writing in the body of the letter as Kirksey’s, he did identify Kirksey’s signature on the last page. Additionally, another State expert found two partial fingerprints on the upper left portion of the signature page; these prints matched Kirksey’s left index and left middle finger. Finally, during the penalty hearing, Kirksey admitted that he wrote the letter to Judge Lehman.
 

 [7]
 

 At the post-conviction hearing, Kelesis testified that he told Kirksey that he would receive the death penalty in California for the murder of Gayette Davis.
 

 [8]
 

 See also
 
 Snell v. Lockhart, 14 F.3d 1289, 1302-03 (8th Cir.),
 
 cert. denied,
 
 513 U.S. 960, 115 S. Ct. 419 (1994); Davis v. Greer, 13 F.3d 1134, 1139-40 (7th Cir.),
 
 cert. denied,
 
 513 U.S. 933, 115 S. Ct. 328 (1994);
 
 *996
 
 Jeffries v. Blodgett, 5 F.3d 1180, 1197-98 (9th Cir. 1993),
 
 cert. denied,
 
 510 U.S. 1191, 114 S. Ct. 1294 (1994);
 
 In re
 
 Jeffries, 752 P.2d 1338, 1340-43 (Wash.),
 
 cert. denied,
 
 488 U.S. 948 (1988).
 
 See generally
 
 Linda E. Carter,
 
 Maintaining Systemic Integrity in Capital Cases: The Use of Court-Appointed Counsel to Present Mitigating Evidence When The Defendant Advocates Death,
 
 55 Tenn. L. Rev. 95, 130-42 (1987).
 

 [9]
 

 See, e.g.,
 
 Williams v. Collins, 16 F.3d 626, 634-35 (5th Cir.),
 
 cert. denied, 512 U.S.
 
 1289, 115 S. Ct. 42 (1994); Hollenback v. United States, 987 F.2d 1272, 1275 (7th Cir. 1993); Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991),
 
 cert. denied,
 
 502 U.S. 1077 (1992); Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990).
 

 [10]
 

 Kirksey also raises each of these issues as constitutional violations independent of his ineffective assistance claims. To the extent that these issues could have been raised on direct appeal, they are waived. Franklin v. State, 110 Nev. 750, 877 P.2d 1058 (1994). We nevertheless address Kirksey’s claims in connection with his contention that appellate counsel should have raised them on direct appeal.
 

 [11]
 

 Kirksey urges this court to disregard the waiver argument because the State failed to rely on this argument at the district court level. We decline the invitation. The State’s failure to make this argument to the district court on this post-conviction petition does not change the fact that the issues could not have been raised on direct appeal because they had been waived. The focus of our inquiry here is from the standpoint of appellate counsel at the time of the direct appeal.
 

 [12]
 

 Two psychiatrists, Doctors Jurasky and Masters, submitted written findings to the district court on the issue of whether Kirksey was competent to stand trial. Although Dr. Jurasky concluded that Kirksey was competent, Dr. Masters’ report did not specifically address the relevant legal standard. Consequently, Judge Lehman informed the parties that he would contact Dr. Masters and request that he file a supplemental report addressing the following questions: (1) can Kirksey distinguish between right and wrong; (2) can Kirksey comprehend the nature and quality of the act with which he’s charged; (3) did Kirksey know what he was doing was wrong at the time; (4) did Kirksey understand his
 
 Miranda
 
 rights and intelligently waive them; and (5) can Kirksey be effective in his own defense. In his supplemental report, Dr. Masters answered each question in the affirmative.
 

 [13]
 

 The various authorities Kirksey cites are distinguishable. All of the cases cited involved ex parte communications between the trial or sentencing judge and members of the victims’ families. The prejudice created by such improper ex parte communications is clear. However, no such prejudice existed in this case.
 

 [14]
 

 Deutscher v. Whitley, 884 F.2d 1152, 1162-63 (9th Cir. 1989),
 
 vacated,
 
 500 U.S. 901 (1991).
 

 [15]
 

 Specifically, Kirksey lists the following evidence:
 

 (1) physical evidence observed by LVMPD Detective Karen Good:
 

 • clothing stacked on the north end of the bureau with red, blood-like spots present;
 

 • red, blood-like substance on the wall behind items listed above;
 

 • red, blood-like substance on the wall in two areas, one behind the first chair closest to the hallway entering the bathroom; and the second to the east of the second chair which was located near the northeast corner of the room;
 

 • a small brown vial with liquid and three small pellets located under the night stand on the north side of the bed, on the carpet;
 

 • soiled, damp towels on the carpet in the closet had a diluted red, blood-like substance on them.
 

 (2) the prosecutor permitted Kearns to lie about never using any kind of drugs, when brown vials at the scene indicated otherwise;
 

 (3) the prosecutor failed to question Kearns about the brown vials found in the room, which would have brought forth evidence of drug use by Kearns and Foxx.
 

 [16]
 

 These exhibits included Kirksey's opening brief on direct appeal, medical records, school records, pre-trial psychiatric evaluations, records from the California Department of Youth Authority, prison education records, affidavit from investigator, and transcripts of grand jury testimony from Dr. Green and Detective Frogue.
 

 [17]
 

 The order stated that "[a]lthough the exhibits were not accepted into evidence, they should be included in the record on appeal so that this court may determine whether the district court abused its discretion in refusing to admit the exhibits into evidence."
 

 [18]
 

 The exhibits have been made a part of the record on appeal and this court did consider the exhibits in its review.