*1034
 
 OPINION
 

 Per Curiam:
 

 This appeal invites the court to consider whether counsel’s affirmative misrepresentation regarding the possible immigration consequences of a guilty plea affects the voluntariness of the plea.
 

 Appellant Manuela Rubio entered a guilty plea to battery with the use of a deadly weapon. After Rubio was deported, she filed a post-conviction motion to withdraw her guilty plea, claiming the court interpreter misadvised her and that her lawyer failed to meet with her to discuss the guilty plea agreement and plea canvass.
 

 While we reaffirm our decision in
 
 Barajas v. State,
 

 [1]
 

 holding that deportation is a collateral consequence that does not affect the vol
 
 *1035
 
 untariness of a guilty plea, we take this opportunity to recognize that affirmative misrepresentation of immigration consequences by counsel is an exception to that general rule and may provide grounds for attacking the voluntariness of the plea. We reject, however, the application of such a rule to misrepresentations by a court interpreter. Because Rubio failed to allege that her attorney made affirmative misrepresentations regarding immigration consequences, we find no abuse of discretion in the district court’s decision to deny her relief on that ground.
 

 However, the district court did not conduct an evidentiary hearing or, in its order, address Rubio’s claim that her attorney failed to provide effective assistance. Therefore, the record is insufficient for us to determine if the facts surrounding Rubio’s guilty plea substantiate this claim for relief. Accordingly, we affirm the district court’s order to the extent that it did not impute the interpreter’s alleged misadvice to counsel. But we reverse the district court’s order to the extent that it denied Rubio’s claims that counsel provided ineffective assistance and remand with instructions to hold an evidentiary hearing on the ineffective assistance of counsel allegations set forth in Rubio’s affidavit supporting her motion.
 

 FACTS AND PROCEDURAL HISTORY
 

 Rubio, a Mexican native and lawful permanent resident of the United States since 1999, resided in Las Vegas with her husband and four minor children. All the children are United States citizens, and the two youngest children, eight-year-old twins, are severely disabled with cerebral palsy and require special care. Rubio’s first language is Spanish and, while not fluent, she had some ability to communicate in English.
 

 On September 29, 2005, Rubio, while driving, saw her husband driving with another woman in his car. Rubio rear-ended his car. She was arrested as a result of the collision and charged with one count of battery with the use of a deadly weapon.
 

 The arraignment and guilty plea agreement
 

 On February 13, 2006, just prior to her arraignment, Rubio met with her court-appointed public defender who presented her with a plea agreement, written in English. After meeting with the Spanish-language interpreter, Rubio entered into a guilty plea agreement filed in open court, pleading guilty to the charged offense. In return for Rubio’s guilty plea, the State agreed not to oppose probation. The State further agreed that if she received and successfully completed probation, Rubio would be allowed to withdraw her plea and plead guilty to misdemeanor battery with a sentence of credit for time served.
 

 The guilty plea agreement, signed by Rubio, included language regarding possible immigration consequences, specifically:
 

 
 *1036
 
 I understand that as a consequence of my plea of guilty, if I am not a citizen of the United States, I may, in addition to other consequences provided for by federal law, be removed, deported, excluded from entry into the United States or denied naturalization.
 

 Additionally, the plea agreement included the standard language indicating that Rubio and her attorney had discussed all elements of the charge, defenses, and strategies; that she was signing the agreement voluntarily; and that her attorney had “answered all [her] questions regarding the plea agreement and its consequences to [her] satisfaction.” Her attorney signed the certificate of counsel stating that he had fully explained the allegations, charge, and penalties to Rubio and that Rubio was competent and understood “the charges and the consequences of pleading guilty.”
 

 During the plea canvass, conducted with the assistance of a court interpreter, Rubio told the district court that she understood the guilty plea agreement, which had been read to her in Spanish. Further, Rubio stated that she had discussed the rights she was waiving with her attorney, that she had no questions, and that she had signed the agreement freely and voluntarily. The district court then accepted Rubio’s guilty plea, and on April 18, 2006, sentenced her to a prison term of 24 to 60 months, suspended execution of the sentence, and imposed a term of probation for up to 3 years. The district court required, as a condition of probation, that Rubio “comply with all INS directives.”
 

 After her conviction, the Immigration & Customs Enforcement Unit (ICE) of the Department of Homeland Security took Rubio into custody, charging her with being removable as an alien convicted of an aggravated felony.
 
 [2]
 
 Rubio was removed to Mexico in January 2007.
 
 [3]
 

 Rubio moves to withdraw her guilty plea
 

 While the proceedings in immigration court were pending, Rubio, with the assistance of new counsel, filed a motion in the
 
 *1037
 
 district court seeking to set aside her judgment of conviction and withdraw her guilty plea.
 
 [4]
 
 She claimed that she entered into her plea agreement without the effective assistance of counsel and that she did not enter into the agreement voluntarily, resulting in a manifest injustice. In the affidavit supporting her motion, Rubio provided a much different picture of what happened at the arraignment than one would assume from a review of the plea canvass.
 

 Rubio asserted that she met her appointed counsel for the first time just prior to the arraignment, when he presented her with the guilty plea agreement. Rubio alleged in her affidavit that she never met with or discussed the guilty plea agreement with counsel again prior to her case being called at the arraignment. Rubio alleged that counsel referred her to the court interpreter and that counsel was not present when the agreement was translated. Rubio indicated that because her attorney told her to meet with the interpreter, she believed that the interpreter worked for the court and would provide proper advice. Rubio stated that the interpreter translated only the basic terms of the guilty plea agreement, not the entire document. Rubio did not indicate whether the basic terms translated included the plea agreement’s language regarding possible immigration consequences. When Rubio asked the interpreter if she would suffer any immigration consequences by signing the guilty plea agreement, the interpreter allegedly told her that as long as Rubio had her “papers” she need not worry. Rubio also stated she was rushed into signing the agreement and never given time to ask her attorney questions with the aid of the interpreter. Further, Rubio stated that had she had that opportunity, and had she fully understood all the terms and been properly advised of the consequences of the guilty plea agreement, she would not have signed it and she would have proceeded to trial. In her affidavit, Rubio also included information concerning her children’s special needs and dependence on Clark County’s special education programs to maintain their well-being.
 

 The district court heard arguments from counsel without taking any testimony regarding the allegations included in Rubio’s affidavit, and denied the motion stating: (1) it “[couldn’t] control what the federal government is doing”; (2) Rubio knew, through the plea memorandum, that “immigration consequences were a part of the plea negotiation for plea”; and (3) “the interpreter can’t be ineffective because she might have said something that was incorrect.”
 

 DISCUSSION
 

 Rubio contends that the district court erred in denying her motion to withdraw her plea because it was not entered voluntarily or knowingly. First, Rubio asserts that her plea is invalid because she
 
 *1038
 
 relied on misinformation regarding possible immigration consequences of the guilty plea, apparently provided by the interpreter, and which her attorney did not address or correct.
 
 [5]
 
 Second, Rubio asserts that she was deprived of her Sixth Amendment right to the effective assistance of counsel when her attorney allegedly instructed her to meet with the Spanish-language interpreter, outside of counsel’s presence, to review the agreement, and then did not discuss the agreement with her.
 
 [6]
 

 We take this opportunity to address whether a guilty plea is invalid when a defendant relies on inaccurate information regarding the collateral consequence of deportation in deciding to plead guilty, which is an issue of first impression for this court. We conclude that Rubio is not entitled to withdraw her guilty plea based on inaccurate information provided by a court interpreter. In contrast, we conclude that Rubio’s assertions regarding her counsel’s alleged ineffective assistance warrant further inquiry by the district court.
 

 Standard of review
 

 This court presumes guilty pleas to be valid, with the defendant bearing the burden to prove that “the plea was not entered knowingly or voluntarily.”
 
 [7]
 
 A guilty plea is knowing and voluntary if the defendant “has a full understanding of both the nature of the charges and the
 
 direct consequences
 
 arising from a plea of guilty.”
 
 [8]
 
 To determine the validity of the guilty plea, we require the district court to look beyond the plea canvass to the entire record
 
 [9]
 
 and the totality of the circumstances.
 
 [10]
 
 Further, a defendant may generally not repudiate her assertions, made in open court, that the plea is voluntary.
 
 [11]
 

 
 *1039
 
 The district court may grant a post-conviction motion to withdraw a guilty plea that was not entered knowingly and voluntarily in order to correct a manifest injustice.
 
 [12]
 
 A guilty plea entered on advice of counsel may be rendered invalid by showing a manifest injustice through ineffective assistance of counsel.
 
 [13]
 
 Manifest injustice may also be demonstrated by a “failure to adequately inform a defendant of the consequences of his plea.”
 
 [14]
 
 While this court will not overturn the district court’s determination on manifest injustice “absent a clear showing of an abuse of discretion,”
 
 [15]
 
 we review a claim of ineffective assistance of counsel de novo, as a mixed question of law and fact.
 
 [16]
 
 We give deference to the district court’s factual findings, however, if not clearly erroneous and supported by substantial evidence.
 
 [17]
 

 Ineffective assistance of counsel
 

 A
 
 defendant is entitled to effective assistance of counsel, as guaranteed by the Sixth Amendment of the United States Constitution, when deciding whether to accept or reject a plea bargain.
 
 [18]
 
 We apply the
 
 Strickland v. Washington
 

 [19]
 

 two-prong test to determine if counsel has provided effective assistance.
 
 [20]
 
 In order to show that she received ineffective assistance of counsel sufficient to render her guilty plea invalid, the defendant must demonstrate: “(1) that [her] counsel’s performance fell below an objective standard of reasonableness; and (2) that [s]he suffered prejudice as a
 
 *1040
 
 result,
 
 i.e.,
 
 that there is a reasonable probability that, but for counsel’s errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.”
 
 [21]
 
 We place the burden on the defendant to prove, at an evidentiary hearing, the underlying factual allegations by a preponderance of the evidence.
 
 [22]
 
 To determine the validity of the guilty plea, we require the district court to look beyond the plea canvass to the entire record
 
 [23]
 
 in evaluating the allegations that the defendant was misled by her attorney’s advice.
 
 [24]
 
 Whether providing inaccurate information regarding the collateral consequence of deportation, upon which the defendant relies in deciding to plead guilty, affects the voluntariness of a guilty plea is an issue of first impression before this court.
 

 Deportation is a collateral consequence, generally not affecting the validity of a guilty plea
 

 As this court recognized in
 
 Barajas v. State,
 
 immigration issues, such as deportation, are collateral consequences of a guilty plea, and as such, do not affect the voluntariness of the plea.
 
 [25]
 
 Therefore, we concluded that neither a trial court’s nor a defense attorney’s failure to advise the defendant of possible immigration consequences rendered the guilty plea involuntary.
 
 [26]
 
 Moreover, as a general rule, we concluded that counsel’s failure to inform the defendant of the collateral consequences was not objectively unreasonable and, therefore, failed to meet the first prong of the
 
 Strickland
 
 test for ineffective assistance of counsel.
 
 [27]
 
 This decision remains valid.
 

 Barajas, however, did not raise the issue of affirmative misrepresentation of immigration consequences and therefore we declined
 
 *1041
 
 to decide whether it provided an exception to the general rale.
 
 [28]
 
 We now accept Rubio’s invitation to consider such an exception.
 
 [29]
 

 We adopt the affirmative misrepresentation exception to the collateral consequence rule
 

 When deciding an issue of first impression, this court exercises its review de novo, and we commonly turn to other jurisdictions for guidance.
 
 [30]
 
 Like other jurisdictions, we recognize the particularly harsh and penal nature of deportation.
 
 [31]
 

 The Supreme Court of the United States has described deportation as “a drastic measure and at times the equivalent of banishment or exile” and further depicted it as “a penalty.”
 
 [32]
 
 Supreme Court Justice Robert H. Jackson described deportation as “a life sentence of banishment.’ ’
 
 [33]
 
 Furthermore, deportation may result in the “loss of both property and life; or of all that makes life worth living.”
 
 [34]
 
 This is especially harsh when the individual has family in the United States.
 
 [35]
 

 Perhaps understanding the harshness of deportation, a growing number of jurisdictions have adopted the affirmative misrepresentation exception to the collateral consequence rule.
 
 [36]
 
 For example, in
 
 United States v. Couto,
 
 the United States Court of Appeals for the Second Circuit held that “an attorney’s
 
 affirmative misrepre
 
 
 *1042
 

 sentations
 
 on the subject [of deportation] might well constitute ineffective assistance.”
 
 [37]
 
 Because “an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable,” the court held that “such a misrepresentation meets the first prong of the [ineffective assistance of counsel] test.”
 
 [38]
 
 The court reasoned that “[i]t follows that if the defendant can also establish that ‘there is a reasonable probability that, but for counsel’s errors, [s]he would not have pleaded guilty and would have insisted on going to trial,’ then, the guilty plea is
 
 *1043
 
 invalid.”
 
 [39]
 
 The court found that Couto’s behavior indicated that she wanted to avoid deportation and that “there can be no doubt that the likelihood of a guilty plea would have greatly diminished had counsel not misled her.’ ’
 
 [40]
 

 More recently, the United States Court of Appeals for the Ninth Circuit unequivocally adopted the affirmative misrepresentation exception for deportation in
 
 United States
 
 v.
 
 Kwan.
 

 [41]
 

 There, Kwan, a legal permanent resident, asked counsel if pleading guilty to two counts of bank fraud would subject him to deportation. His counsel assured him that while deportation was “technically a possibility ... ‘it was not a serious possibility.’ ”
 
 [42]
 
 His counsel went on to advise Kwan that, “based on his knowledge and experience,” even if the court told Kwan that he faced potential deportation, he should not be concerned.
 
 [43]
 
 Kwan pleaded guilty to what was an aggravated felony for immigration purposes and was subsequently placed in removal proceedings.
 
 [44]
 
 The Ninth Circuit, relying on
 
 Couto,
 
 stated “that where, as here, counsel has not merely failed to inform, but has effectively misled, his client about the immigration consequences of a conviction, counsel’s performance is objectively unreasonable under contemporary standards for attorney competence.”
 
 [45]
 
 The
 
 Kwan
 
 court also noted that “[counsel’s performance . . . fell below the American Bar Association’s ethical standard for criminal defense attorneys with respect to immigration consequences,” which provides that “ ‘if a defendant will face deportation as a result of a conviction, defense counsel “should fully advise the defendant of these consequences.” ’ ”
 
 [46]
 

 We find the reasoning of the
 
 Couto
 
 and
 
 Kwan
 
 courts persuasive with respect to the affirmative misrepresentation exception to the general rule regarding collateral consequences. We now join those jurisdictions that have adopted or recognized the affirmative misrepresentation exception to the collateral consequence rule and hold that affirmative misadvice regarding immigration consequences may constitute ineffective assistance of counsel and support withdrawal of a guilty plea as involuntarily entered.
 
 [47]
 

 
 *1044
 
 Mere assertion of affirmative misrepresentation, however, is not sufficient to invalidate a guilty plea. As other jurisdictions have required, we recognize that district courts should hold an evidentiary hearing for colorable claims of affirmative misrepresentation.
 
 [48]
 
 The defendant still bears the burden to demonstrate that he was actually misinformed, thus meeting the first prong of the
 
 Strickland
 
 inquiry regarding substandard performance by his attorney. The trial court must then determine, based on the totality of the circumstances, whether the defendant was prejudiced; specifically, the trial court must find that the defendant would not have pleaded guilty but for the misrepresentation.
 
 [49]
 

 Rubio did not clearly establish affirmative misrepresentation
 

 While we adopt the affirmative misrepresentation exception to the collateral consequence rule, we decline to extend it to misrepresentations by court interpreters. Here, Rubio asserts that the
 
 *1045
 
 court interpreter told her that she did not have to be concerned about immigration consequences if Rubio had her “papers.” Rubio never contended in her affidavit, pleadings, or at the hearing before the district judge that her counsel misinformed her. Rather, she averred that she mistakenly believed that the interpreter worked for “the court” and could provide her with legal advice. The genesis of the exception is the relationship between attorney and client, an issue not presented in this case because Rubio failed to assert that counsel misinformed her as to the immigration consequences of pleading guilty. Therefore, the exception cannot provide Rubio grounds for withdrawing her guilty plea.
 

 Rubio’s claims regarding counsel’s assistance during the plea process warrant an evidentiary hearing
 

 Rubio asserts that her counsel never reviewed the guilty plea agreement with her and that counsel was not present while she met with the interpreter. The State contends that Rubio, during the plea canvass, indicated to the district court that she had reviewed the guilty plea agreement with counsel and that she understood the terms of the agreement. In fact, the following exchange took place during the plea canvass:
 

 THE COURT: I have here a copy of your guilty plea agreement in my hand. Was it read to you in Spanish?
 

 THE DEFENDANT: Yes.
 

 THE COURT: Did you understand what was read to you?
 

 THE DEFENDANT: Yes.
 

 THE COURT: Understand by pleading guilty you’re giving up the six valuable Constitutional rights listed in the plea agreement?
 

 THE DEFENDANT: Yes.
 

 THE COURT: Discuss those rights with your attorney?
 

 THE DEFENDANT: Yes.
 

 THE COURT: Have any questions about those rights?
 

 THE DEFENDANT: No.
 

 THE COURT: Have any questions about negotiations?
 

 THE DEFENDANT: No.
 

 We note, however, that Rubio’s affidavit clearly indicates that she assumed that the interpreter could provide legal advice about the guilty plea agreement because her counsel sent her to speak with the interpreter outside his presence. Thus, she argues, she answered in the affirmative that she understood the guilty plea agreement and had discussed her rights with counsel because she thought she was talking with a legal representative when she met
 
 *1046
 
 with the interpreter. She further asserts that her attorney failed to consult with her with the assistance of the interpreter to ask if she had any questions or to review the terms of the plea agreement.
 

 As previously noted, this court has long held that when determining if “a defendant entered a guilty plea knowingly and voluntarily, a reviewing court should carefully consider the totality of the circumstances.”
 
 [50]
 
 In
 
 Little v. Warden,
 
 this court explained that it will not “ Took only to the technical sufficiency of a plea canvass to determine whether a plea’ is invalid,’ ’ but will also look to whether the district court conducted an evidentiary hearing to determine if the plea was constitutionally infirm or whether such a hearing was unnecessary.
 
 [51]
 
 In
 
 Little,
 
 we included a nonexhaustive list of relevant considerations for determining whether the record belies a defendant’s claim that his plea was invalid: whether the signed plea agreement included the information of which the defendant claimed he had no knowledge, whether the defendant or counsel made any statement on the record indicating knowledge of the claimed deficiency, and whether the plea negotiations indicated knowledge of the claimed deficiency.
 
 [52]
 
 Additionally, when the defendant’s claims are belied by the record or not supported by specific facts, which, if true, would entitle him to relief, the district court may reject a claim without conducting an evidentiary hearing.
 
 [53]
 

 As we stated in
 
 Mann
 
 v.
 
 State,
 
 “[a] claim is ‘belied’ when it is contradicted or proven to be false by the record as it existed at the time the claim was made.’ ’
 
 [54]
 
 Here, we acknowledge that the formal plea agreement includes a paragraph noting that the plea may carry immigration consequences. However, the plea canvass did not directly address whether counsel reviewed the entire guilty plea agreement with Rubio after she met with the interpreter. Rather, the district court inquired only if Rubio understood the guilty plea agreement and whether counsel had explained the rights she was waiving by entering into the guilty plea. Further, while Rubio’s affidavit states that the basic terms of the plea agreement were translated for her, it is unclear whether this included the paragraph noting the possible immigration consequences. Therefore, we cannot
 
 *1047
 
 conclude that the assertions in Rubio’s affidavit are belied by the record. The issue of whether her counsel had actually reviewed the guilty plea agreement was not addressed by the district court in its canvass, and Rubio’s assertions may explain her answers during the plea canvass.
 

 The district court did not conduct an evidentiary hearing on Rubio’s allegation that counsel essentially abandoned her to a non-legally trained interpreter to discuss the plea agreement. Nor did the district court’s order include findings regarding this claim. As discussed above, a defendant is entitled to effective assistance of counsel when deciding whether to plead guilty or go to trial. Allowing nonlegally trained personnel to meet with the defendant to discuss a guilty plea agreement, without the opportunity to review the same with counsel, may violate due process and meet the first prong of the
 
 Strickland
 
 test.
 

 Rubio may also be able to meet the second prong of the
 
 Strickland
 
 test, which requires she show that she suffered prejudice as a result of her counsel’s ineffective assistance. Rubio alleges that, when she entered her guilty plea, counsel was unaware that she had two United States citizen children who suffered from cerebral palsy. The State argues that the condition of Rubio’s children is irrelevant to determining whether Rubio voluntarily or knowingly entered her guilty plea. However, this fact may be integral to determining whether, but for counsel’s alleged lack of assistance regarding the possible immigration consequences of pleading guilty, Rubio would not have pleaded guilty and would have instead gone to trial.
 

 If we accept the facts asserted in Rubio’s affidavit as true, Rubio may be entitled to relief. Therefore, the district court abused its discretion by failing to conduct an evidentiary hearing on this issue.
 

 CONCLUSION
 

 Today, we adopt the affirmative misrepresentation exception to the collateral consequence rule. Counsel who affirmatively misrepresents the immigration consequences of a guilty plea provides objectively unreasonable representation, meeting the first prong of the
 
 Strickland
 
 test for ineffective assistance of counsel. Because Rubio failed to allege affirmative misrepresentation by counsel, this exception provides her no relief. However, we conclude that the district court abused its discretion by not holding an evidentiary hearing on Rubio’s claims that counsel abandoned her to the interpreter; Rubio’s factual allegations in this respect are not entirely belied by the record and, accepting them as true, Rubio may be en
 
 *1048
 
 titled to relief. Accordingly, we affirm the district court’s order with respect to the interpreter’s alleged misadvice, reverse the district court’s order with respect to Rubio’s ineffective-assistance claims, and remand with instructions to hold an evidentiary hearing on those claims.
 

 [1]
 

 115 Nev. 440, 442, 991 P.2d 474, 475-76 (1999).
 

 [2]
 

 The Immigration & Nationality Act (INA) is codified under Title 8 of the United States Code.
 
 See
 
 8 U.S.C. § 1227(a)(2)(A)(iii) (2000) (making any alien “convicted of an aggravated felony at any time after admission” deportable);
 
 see also 8
 
 U.S.C. § 1101(a)(43)(F) (2000) (defining aggravated felony as a crime of violence as set forth under 18 U.S.C. § 16, for which a sentence of at least one year may be imposed); 18 U.S.C. § 16(a) (2000) (defining crime of violence as including an element of “the use, attempted use, or threatened use of physical force against the person or property of another”). ICE also charged Rubio with being removable as an alien convicted of a crime of domestic violence after entry.
 
 See
 
 8 U.S.C. § 1227(a)(2)(E)(i)(2000) (defining domestic violence as “any crime of violence . . . against a person committed by a current or former spouse of the person”).
 

 [3]
 

 See 8
 
 U.S.C. § 1229b(a)(3) (2000) (giving the government discretion to cancel removal if, among other things, the alien “has not been convicted of any aggravated felony”).
 

 [4]
 

 Rubio never filed a direct appeal from the judgment of conviction.
 

 [5]
 

 Additionally, Rubio argues that her plea was involuntary because she was unable to receive the benefit for which she specifically bargained, namely, the granting of a term of probation. Because Rubio failed to properly raise this issue in the district court in the first instance, we decline to consider it.
 
 McNelton v. State,
 
 115 Nev. 396, 416, 990 P.2d 1263, 1276 (1999). However, nothing in this opinion prevents Rubio from requesting permission from the district court on remand to file a supplement to the motion to withdraw the guilty plea where she could raise the issue.
 

 [6]
 

 U.S. Const, amend. VI.
 

 [7]
 

 Barajas
 
 v.
 
 State,
 
 115 Nev. 440, 442, 991 P.2d 474, 475 (1999).
 

 [8]
 

 Little v. Warden,
 
 117 Nev. 845, 849, 34 P.3d 540, 543 (2001).
 

 [9]
 

 Barajas,
 
 115 Nev at 442, 991 P.2d at 475 (citing
 
 Bryant v. State,
 
 102 Nev. 268, 272, 721 P.2d 364, 368 (1986)).
 

 [10]
 

 Little,
 
 117 Nev. at 851, 34 P.3d at 544.
 

 [11]
 

 See Lundy
 
 v.
 
 Warden,
 
 89 Nev. 419, 422, 514 P.2d 212, 213-14 (1973);
 
 see also Brady v. United States,
 
 397 U.S. 742, 758 (1970).
 

 [12]
 

 Barajas, 115 Nev. at 442, 991 P.2d at 475;
 
 see
 
 NRS 176.165.
 

 [13]
 

 See United States
 
 v.
 
 Signori,
 
 844 F.2d 635, 638 (9th Cir. 1988);
 
 see generally Barajas,
 
 115 Nev. at 442, 991 P.2d at 476.
 

 [14]
 

 Rune
 
 v.
 
 State,
 
 110 Nev. 609, 619, 877 P.2d 1025, 1031 (1994),
 
 overruled on other grounds by Leslie v. Warden,
 
 118 Nev. 773, 780-81, 59 P.3d 440, 445-46 (2002). We note that, generally, this standard applies only to direct consequences of a guilty plea. In this opinion, we do not reach nor intend to expand this standard to any collateral consequence beyond the specific issue involved herein — misadvisement regarding deportation.
 

 [15]
 

 Barajas,
 
 115 Nev. at 442, 991 P.2d at 475.
 

 [16]
 

 Lader v. Warden,
 
 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005) (citing
 
 Kirksey
 
 v.
 
 State,
 
 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996)).
 

 [17]
 

 Id.
 
 at 686, 120 P.3d at 1166.
 

 [18]
 

 Larson v. State,
 
 104 Nev 691, 693 n.6, 766 P.2d 261, 262 n.6 (1988) (citing
 
 McMann
 
 v.
 
 Richardson,
 
 397 U.S. 759, 771 (1970), for proposition that the “[c]onstitution guarantees effective counsel when accepting guilty plea,”
 
 and Turner
 
 v.
 
 State of Tenn.,
 
 858 F.2d 1201 (6th Cir. 1988),
 
 vacated on other grounds,
 
 492 U.S. 902 (1989), for the proposition that the “[constitution guarantees effective counsel when rejecting a plea offer”).
 

 [19]
 

 466 U.S. 668 (1984).
 

 [20]
 

 Larson,
 
 104 Nev. at 694, 766 P.2d at 263 (citing
 
 Strickland,
 
 466 U.S. at 687-88 (1984)).
 

 [21]
 

 Avery
 
 v.
 
 State,
 
 122 Nev. 278, 285, 129 P.3d 664, 669 (2006) (citing
 
 Strickland,
 
 466 U.S. at 687-88;
 
 Warden v. Lyons,
 
 100 Nev. 430, 683 P.2d 504 (1984) (adopting the
 
 Strickland
 
 test);
 
 Hill
 
 v.
 
 Lockhart,
 
 474 U.S. 52, 59 (1985); and
 
 Kirksey,
 
 112 Nev. at 988, 923 P.2d at 1107 (adopting the
 
 Hill
 
 standard for prejudice where the conviction is the result of a guilty plea)).
 

 [22]
 

 Foster v. State,
 
 121 Nev. 165, 169, 111 P.3d 1083, 1086 (2005).
 

 [23]
 

 Barajas v. State,
 
 115 Nev. 440, 442, 991 P2d 474, 475 (1999) (citing
 
 Bryant
 
 v.
 
 State,
 
 102 Nev. 268, 272, 721 P.2d 364, 368 (1986)).
 

 [24]
 

 Mitchell v. State,
 
 109 Nev. 137, 140-41, 848 P.2d 1060, 1061-62 (1993).
 

 [25]
 

 115 Nev. at 442, 991 P2d at 475.
 

 [26]
 

 Id. at 442, 991 P.2d at 476.
 
 See Nollette v. State,
 
 118 Nev. 341, 349-50, 46 P.3d 87, 93 (2002) (relying on
 
 Barajas
 
 and holding that failure to inform a defendant of the collateral consequences of sex offender registration and potential loss of professional license does not support an ineffective assistance of counsel claim).
 

 [27]
 

 Barajas,
 
 115 Nev. at 442-43, 991 P.2d at 476 (citing
 
 United States v. Banda,
 
 1 F.3d 354, 356 (5th Cir. 1993)).
 

 [28]
 

 Id.
 
 at 442 n.1, 991 P.2d at 476 n.1 (recognizing that some federal courts had adopted the affirmative misrepresentation exception for deportation).
 

 [29]
 

 We invited the public defenders from Washoe and Clark Counties to submit amicus briefs. The Washoe County Public Defender filed an amicus brief but Clark County declined, citing a potential conflict of interest.
 

 [30]
 

 See Nay v. State,
 
 123 Nev. 326, 330-33, 167 P.3d 430, 433-35 (2007);
 
 see also Rose v. State,
 
 123 Nev. 194, 210-11, 163 P.3d 408, 419 (2007).
 

 [31]
 

 See, e.g., United States v. Russell,
 
 686 F.2d 35, 38 (D.C. Cir. 1982);
 
 Downs-Morgan v. United States,
 
 765 F.2d 1534, 1541 (11th Cir. 1985);
 
 State
 
 v.
 
 Rojas-Martinez,
 
 125 P.3d 930, 934 (Utah 2005).
 

 [32]
 

 Fong Haw Tan v. Phelan,
 
 333 U.S. 6, 10 (1948) (citing
 
 Delgadillo v. Carmichael,
 
 332 U.S. 388 (1947));
 
 Jordan v. De George,
 
 341 U.S. 223, 231 (1951).
 

 [33]
 

 Jordan,
 
 341 U.S. at 232 (Jackson, J., dissenting).
 

 [34]
 

 Ng Fung Ho v. White,
 
 259 U.S. 276, 284 (1922).
 

 [35]
 

 Santosky
 
 v.
 
 Kramer,
 
 455 U.S. 745, 787 (1982) (“Few consequences of judicial action are so grave as the severance of natural family ties.”).
 

 [36]
 

 See, e.g., Sandoval
 
 v.
 
 I.N.S.,
 
 240 F.3d 577, 578-79 (7th Cir. 2001) (reasonable reliance on counsel’s erroneous advice regarding deportation can render a guilty plea involuntary);
 
 Downs-Morgan,
 
 765 F.2d at 1540-41 (counsel’s affirmative misrepresentation regarding “certain considerations,” such as deportation, “may render the guilty plea constitutionally uninformed”);
 
 Russell,
 
 686 F.2d at 40-41 (noting that misleading information by the prosecution about immigration consequences may render a guilty plea invalid);
 
 United
 
 
 *1042
 

 States
 
 v. Minhas, Nos. 4:94cr4046-WS, 4:06cv227-WS, 2008 WL 239079, at *12 (N.D. Fla. Jan. 28, 2008) (erroneous advice regarding immigration consequences assumed to meet the first prong of
 
 Strickland v. Washington, 466
 
 U.S. 668 (1984));
 
 United States v. Mora-Gomez,
 
 875 F. Supp. 1208, 1213 (E.D. Va. 1995) (“counsel’s affirmative misrepresentation regarding the deportation consequences of a guilty plea may, but does not automatically, constitute ineffective assistance”);
 
 United States v. Nagaro-Garbin,
 
 653 F. Supp. 586, 590 (E.D. Mich. 1987) (noting that affirmative misrepresentations made in response to specific inquiries may support a claim for ineffective assistance of counsel);
 
 In re Resendiz,
 
 19 P.3d 1171, 1177 (Cal. 2001) (holding “that affirmative misadvice regarding immigration consequences can in certain circumstances constitute ineffective assistance of counsel”);
 
 People v. Soriano,
 
 240 Cal. Rptr. 328, 335-36 (Ct. App. 1987) (in a case where asking for a sentence of less than one year would have avoided deportation, holding that a “formulaic warning” about immigration consequences constitutes ineffective assistance of counsel);
 
 People v. Correa,
 
 485 N.E.2d 307, 311-12 (Ill. 1985) (concluding that defendant’s guilty pleas “were not intelligently and knowingly made and therefore were not voluntary” when counsel provided erroneous and misleading advice concerning specific inquiries regarding deportation consequences);
 
 Williams v. State,
 
 641 N.E.2d 44, 49 (Ind. Ct. App. 1994) (holding that failure “to advise a noncitizen defendant of the deportation consequences of a guilty plea” constitutes ineffective assistance of counsel);
 
 Rojas-Martinez,
 
 125 P.3d at 935 (formally adopting the affirmative misrepresentation exception for deportation consequences);
 
 In re Yim,
 
 989 P.2d 512, 516 (Wash. 1999) (“an affirmative misrepresentation to a defendant regarding the possibility of deportation might constitute a ‘manifest injustice,’ and, thus, provide a basis for setting aside a guilty plea”). While our decision today does not reach beyond deportation consequences, we note that a number of jurisdictions have adopted the affirmative misrepresentation exception in cases involving other collateral consequences of a guilty plea.
 
 See, e.g., Hill v. Lockhart,
 
 894 F.2d 1009, 1010 (8th Cir. 1990) (affirmative misadvice regarding parole eligibility may constitute ineffective assistance of counsel rendering the plea invalid);
 
 Sparks v. Sowders, 852
 
 F.2d 882, 885 (6th Cir. 1988) (holding that “gross misadvice concerning parole eligibility can amount to ineffective assistance of counsel” and render a guilty plea invalid);
 
 Strader
 
 v.
 
 Garrison,
 
 611 F.2d 61, 65 (4th Cir. 1979) (guilty plea induced by erroneous advice regarding parole eligibility was involuntary and unintelligent);
 
 People v. Garcia,
 
 815 P.2d 937, 941-43 (Colo. 1991) (generally acknowledging that incorrect advice regarding a collateral consequence could render guilty plea invalid if both prongs of
 
 Strickland
 
 are met);
 
 Roberti v. State,
 
 782 So. 2d 919, 920 (Fla. Dist. Ct. App. 2001) (holding that “[affirmative misadvice about even a collateral consequence of a plea constitutes ineffective assistance of counsel and provides a basis on which to withdraw the plea”).
 

 [37]
 

 311 F.3d 179, 187 (2d Cir. 2002).
 

 [38]
 

 Id.
 
 at 188.
 

 [39]
 

 Id.
 
 (quoting
 
 U.S. v. Hernandez,
 
 242 F.3d 110, 112 (2d Cir. 2001)).
 

 [40]
 

 Id.
 
 at 188 n.9.
 

 [41]
 

 407 F.3d 1005, 1015-16 (9th Cir. 2005).
 

 [42]
 

 Id.
 
 at 1008.
 

 [43]
 

 Id.
 

 [44]
 

 Id.
 
 at 1008-09.
 

 [45]
 

 Id.
 
 at 1015.
 

 [46]
 

 Id. at 1016 (quoting
 
 INS
 
 v.
 
 St. Cyr,
 
 533 U.S. 289, 322 (2001) (quoting 3 ABA Standards for Criminal Justice 14-3.2 Comment, 75 (2d ed. 1982))).
 

 [47]
 

 In our decision to adopt the affirmative misrepresentation exception, we continue to stress, as we did in
 
 Nollette v. State,
 
 that advising a client considering a guilty plea of all foreseeable consequences, whether direct or collateral, makes for good practice. 118 Nev. 341, 349, 46 P.3d 87, 92 (2002). As ami
 
 *1044
 
 cus Washoe County Public Defender suggests, we encourage counsel to address potential deportation issues when discussing the potential consequences of a guilty plea, even if the question is not initially raised by the defendant, and even though such a discussion is not required to give effective assistance. Realizing that counsel may not be an expert in immigration law, we stress that any advice given must be correct. As noted by amicus, an example of the type of discussion we encourage is found in the New Mexico case of
 
 State v. Carlos,
 
 147 P.3d 897 (N.M. Ct. App. 2006). There, the deputy public defender testified that, when discussing guilty plea consequences, she would give her clients “the whole gamut of what could be expected and what is likely to happen.”
 
 Id.
 
 at 899-900. She also stated she would tell anyone that if they were not American citizens
 

 that they could be subject to deportation proceedings, that their paperwork or their status is reviewed by immigration, that a decision is made on how to proceed, that more likely than not it ends up in some type of formal proceeding where immigration would look at whether they would be allowed to stay in the United States if there is a conviction of [sic] any point. I also go into a brief explanation of what a deportation proceeding involves, I tell people that they’re entitled to have an attorney represent them, that that is not our job as public defenders, and that we do not pretend to know immigration law, and that their best advice would be also to consult or talk with other people regarding that.
 

 Id.
 
 at 900. We support such discussion. Further, we recognize that if asked by the defendant, counsel must, at a minimum, ensure that the defendant is aware that entering a guilty plea
 
 may
 
 result in negative immigration consequences.
 

 [48]
 

 See Downs-Morgan
 
 v.
 
 United States,
 
 765 F.2d 1534, 1541 (11th Cir. 1985) (concluding that the defendant was entitled to an evidentiary hearing to determine whether counsel was ineffective based on the assertions presented in defendant’s affidavit).
 

 [49]
 

 See United States v. Nagaro-Garbin,
 
 653 F. Supp. 586, 590 (E.D. Mich. 1987);
 
 People v. Garcia,
 
 815 P.2d 937, 943 (Colo. 1991);
 
 Roberti v. State,
 
 782 So. 2d 919, 920 (Fla. Dist. Ct. App. 2001).
 

 [50]
 

 Little v. Warden,
 
 117 Nev. 845, 851, 34 P.3d 540, 544 (2001).
 

 [51]
 

 Id.
 
 (quoting
 
 Bryant v. State,
 
 102 Nev. 268, 271, 721 P.2d 364, 367 (1986)).
 

 [52]
 

 Little,
 
 117 Nev. at 852, 34 P.3d at 545.
 

 [53]
 

 See Hargrove
 
 v.
 
 State,
 
 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). The court may also reject a substantive post-conviction claim without an evidentiary hearing when the claim is procedurally barred and the defendant cannot overcome the procedural bar.
 
 Little,
 
 117 Nev. at 853-54, 34 P.3d at 545.
 

 [54]
 

 118 Nev. 351, 354, 46 P.3d 1228, 1230 (2002).