142 Nev., Advance Opinion 39

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
ROCKY STANLEY SALAZAR,
Respondent.

No. 89867

**FILED**

MAY 28 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting a motion to dismiss a second-degree murder charge for lack of jurisdiction. Fourth Judicial District Court, Elko County; Kriston N. Hill, Judge.

*Reversed and remanded.*

Aaron D. Ford, Attorney General, Carson City; Tyler J. Ingram, District Attorney, and Justin M. Barainca, Deputy District Attorney, Elko County, for Appellant.

Steffanie A. Foster, Interim Public Defender, Elko County, for Respondent.

Kevin L. Pasquale, District Attorney, and Anthony R. Gordon, Chief Deputy District Attorney, Humboldt County, for Amicus Curiae Humboldt County.

BEFORE THE SUPREME COURT, EN BANC.

26-24172

*OPINION*

By the Court, STIGLICH, J.:

Nevada has jurisdiction to prosecute crimes that are "consummated within its boundaries." NRS 171.015. The question here is whether the State has jurisdiction to prosecute an alleged murder that occurred partially within tribal land and partially within nontribal state territory. We hold that it does. While the Major Crimes Act ordinarily establishes exclusive federal jurisdiction over murders committed by Indian defendants in Indian country, it does not apply where the crimes are interterritorial. Accordingly, we conclude that the district court improperly dismissed the case for lack of jurisdiction.

## FACTS AND PROCEDURAL HISTORY

Rocky Salazar, a member of the federally recognized Te-Moak Tribe of Western Shoshone Indians, allegedly sold fentanyl to Eric Cabibi, a nontribal member. The sale occurred within Te-Moak territory, located inside Nevada's state borders. After the sale, Cabibi left tribal land. Within nontribal state territory, Cabibi consumed the fentanyl and died of "acute fentanyl and methamphetamine toxicity."

The State charged Salazar with second-degree murder caused by a controlled substance under NRS 453.333. Salazar moved to dismiss, arguing that the federal Major Crimes Act preempted Nevada's jurisdiction. The district court agreed, reasoning that the only criminal act Salazar allegedly committed—the sale of fentanyl—occurred within tribal territory, and granted the motion to dismiss. The State now appeals.

## DISCUSSION

The State argues that the district court erred in dismissing the case against Salazar because Nevada has concurrent jurisdiction to

prosecute crimes occurring partially within Nevada nontribal state territory and partially within Indian country.[1]  This is an issue of first impression. Although we review a decision to dismiss a criminal charging document for abuse of discretion, *Morgan v. State*, 134 Nev. 200, 205, 416 P.3d 212, 220 (2018), because this case involves a question of law regarding subject matter jurisdiction, we review the district court's decision de novo, *Zalyaul v. State*, 138 Nev. 760, 762, 520 P.3d 345, 347 (2022).

Nevada's criminal jurisdiction statutes provide jurisdiction "[w]hen the commission of a public offense, commenced without the State, is consummated within its boundaries."  NRS 171.015.  The State charged Salazar with second-degree murder caused by a controlled substance that Salazar sold to the victim, a non-Indian, in Indian country.  The question is whether exercising jurisdiction in this circumstance is preempted by the Major Crimes Act.  18 U.S.C. § 1153(a).  To answer this question, we must first address whether the crime occurred wholly within Indian country, as Salazar argues, or partially within Nevada nontribal state territory, as the State argues.

*The crime was completed within Nevada nontribal state territory*

A crime is complete only when "every element in the crime occurs."  *Rimer v. State*, 131 Nev. 307, 318, 351 P.3d 697, 706 (2015) (citation modified).  The State charged Salazar with second-degree murder caused by the sale of a controlled substance to the victim.  NRS 453.333 defines this crime as selling, giving, trading, or otherwise making available a controlled

---

[1]The United States Congress defines "Indian country," in part, as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government."  18 U.S.C. § 1151.  We use this term interchangeably with "tribal land" and "tribal territory."

substance that proximately causes the death of a person. An essential element of second-degree murder caused by a controlled substance is the death of the victim. Therefore, under *Rimer*, the crime of second-degree murder caused by a controlled substance is only complete upon the occurrence of the victim's death. *Cf. Wheat v. State*, 734 P.2d 1007, 1009 (Alaska Ct. App. 1987) (holding a crime that requires a specific result is not completed until that result occurs, notwithstanding the situs of the defendant's conduct).

Here, although the fentanyl sale occurred on the Te-Moak reservation, Cabibi then transported the fentanyl off of tribal land and fatally overdosed in nontribal state territory. The crime was thereby completed, upon Cabibi's death, in nontribal state territory. Accordingly, it is an interterritorial crime; that is, it occurred partially within Indian country and partially within Nevada nontribal state territory. And because it was completed in nontribal state territory, it was therefore consummated in Nevada and is the type of offense contemplated by NRS 171.015.

*The Major Crimes Act does not preempt concurrent jurisdiction for crimes occurring partially in Indian country and partially within nontribal state territory*

As the State has jurisdiction over offenses consummated within its territory pursuant to NRS 171.015, we next look at whether federal law preempts Nevada's jurisdiction over such an interterritorial crime. Whether a federal statute preempts state law is a question of law subject to de novo review. *Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 123 Nev. 362, 370, 168 P.3d 73, 79 (2007). We recognize that the preemption analysis in the Indian law context is subject to distinct considerations compared to other contexts in which preemption issues arise. *See, e.g.*, *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143 (1980) ("The

unique historical origins of tribal sovereignty make it generally unhelpful to apply to federal enactments regulating Indian tribes those standards of pre-emption that have emerged in other areas of the law."). The parties' arguments are limited to express preemption under the Major Crimes Act, so we limit our analysis accordingly.

In the context of criminal jurisdiction, the Major Crimes Act assigns jurisdiction exclusively to the federal government to prosecute murder, among other enumerated crimes, when committed by a tribal member within tribal land.[2] 18 U.S.C. § 1153(a). When those three conditions are met—(1) an enumerated crime, (2) is committed by a tribal-member offender, (3) within Indian country—state jurisdiction is preempted. *Negonsott v. Samuels*, 507 U.S. 99, 102-03 (1993). The State argues, however, that the Major Crimes Act does not preempt the State's jurisdiction over interterritorial crimes. We agree.

The Major Crimes Act extends to those crimes specifically listed in 18 U.S.C. § 1153(a) when committed by a tribal member within Indian country. The language is clear: the crime must be "commit[ted]" "within the Indian country." Crimes spanning across Indian country and nontribal state territory are not committed *within* Indian country. Thus, 18 U.S.C. § 1153(a) does not expressly preempt state jurisdiction over crimes occurring only partly within Indian country.

---

[2]The 13 enumerated crimes over which the federal government has exclusive jurisdiction pursuant to the Major Crimes Act are "murder, manslaughter, kidnapping, maiming, a felony under chapter 109A [criminalizing sexual abuse], incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661," which addresses theft in special maritime and territorial jurisdiction of the United States. 18 U.S.C. § 1153(a).

Other states that have addressed the issue have determined that the Major Crimes Act does not preempt concurrent state jurisdiction over interterritorial crimes. *E.g.*, *State v. Winckler*, 260 N.W.2d 356, 362-63 (S.D. 1977) (indicating the State had jurisdiction to prosecute tribal members for firing shots from Indian country into state territory); *State v. Kills on Top*, 787 P.2d 336, 343 (Mont. 1990) (indicating the State had jurisdiction to prosecute tribal members for a kidnapping that occurred in part on the reservation); *State v. Robles*, 901 P.2d 1200, 1202, 1204 (Ariz. Ct. App. 1995) (indicating the State had jurisdiction to prosecute tribal member for conspiracy to commit murder that was established in state territory and continued onto tribal lands where murder was carried out); *see also* Felix S. Cohen, *Cohen's Handbook of Federal Indian Law* § 11.02[1][c], at 750 (Nell Jessup Newton & Kevin K. Washburn, eds., 2024) ("Most courts addressing this issue have concluded that when a [Major Crimes Act] crime occurs both inside and outside Indian country, state courts acquire concurrent jurisdiction over the crimes that occurred at least partially within the state's territorial jurisdiction.").

In settling questions of first impression, we can look to these persuasive authorities for guidance. *Rubio v. State*, 124 Nev. 1032, 1041, 194 P.3d 1224, 1230 (2008). In the company of these other jurisdictions, we conclude that the Major Crimes Act does not bar concurrent jurisdiction over crimes that occur partially within Indian country and partially within Nevada state territory.

*Whether Salazar intended sale of the drugs to lead to the death of the victim does not affect the State's jurisdiction*

Salazar argued, and the district court held, that the only intentional act alleged was the sale of fentanyl, not the death in state territory that ensued, so the cases finding concurrent jurisdiction under the

Supreme Court
of
Nevada

6

Major Crimes Act for crimes that straddle tribal and nontribal territory do not apply. But this argument is not persuasive. Under NRS 453.333, the sale of the controlled substance stands as the intentional act that supports the second-degree murder charge when death ensues as a consequence. *See* 4 Wayne R. LaFave et al., *Criminal Procedure* § 16.4(c) (4th ed. 2015) (discussing crimes that straddle more than one jurisdiction). With that, we conclude that the State's jurisdiction under NRS 171.015 stands.[3]

## CONCLUSION

The State has jurisdiction to prosecute crimes that are "consummated within its boundaries." NRS 171.015. Although the Major Crimes Act preempts the State's jurisdiction over 13 enumerated crimes committed by tribal members within tribal land, 18 U.S.C. § 1153(a), we hold that it does not preempt jurisdiction when one of those enumerated crimes occurs partially within Indian country and partially within nontribal state territory. Therefore, we conclude that the State has jurisdiction to prosecute Salazar for second-degree murder caused by a controlled substance because that offense was consummated in Nevada nontribal state territory. The district court erred in determining that the State's jurisdiction was preempted and in dismissing the case against Salazar.

---

[3]Salazar also argues that the State cannot exercise even concurrent jurisdiction without the tribe's consent under NRS 41.430 and notes that the record does not show that the Te-Moak Tribe consented to the State's exercise of criminal jurisdiction over offenses committed on its reservation. The only authority Salazar offers to support this argument is NRS 41.430, which by its terms requires tribal consent for the State to "assume jurisdiction over public offenses committed by or against Indians *in the areas of Indian country*." (Emphasis added.) Because Salazar fails to provide authority supporting the argument that tribal consent is required for the State to prosecute interterritorial crimes, we do not address the argument. *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

Accordingly, we reverse the district court's order of dismissal and remand for further proceedings.

_____, J.
Stiglich

We concur:

_____, C.J.
Herndon

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Bell

_____, J.
Lee

SUPREME COURT
OF
NEVADA